[No. 9326. Department Two. October 11, 1911.]

H. E. ORR, *Respondent*, v. PERKY INVESTMENT COMPANY et al., *Appellants.*[1]

PLEADING—EQUITABLE RELIEF—PRAYER OF COMPLAINT — IMMATERIALITY. In an action for equitable relief, an unnecessary prayer for the reformation of an instrument is of no controlling force upon the relief that may be granted, where the complaint and proofs establish a constructive trust *ex maleficio*.

BROKERS—COMMISSIONS—ORAL CONTRACTS—FRAUDS, STATUTE OF. An oral contract between brokers to divide commissions is not within the statute of frauds, Rem. & Bal. Code, § 5289, requiring an agreement employing a broker to sell real estate to be in writing.

TRUSTS—CONSTRUCTIVE TRUSTS—EVIDENCE — FRAUDS, STATUTE OF. Where defendants, real estate brokers, having orally agreed with plaintiff to divide commissions on a sale of real estate, fraudulently represented the same as cash when in fact the commissions received was a lot of greater value, a constructive trust *ex maleficio* arises, which does not fall within the statute of frauds and may be established by parol evidence.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered November 28, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to reform a written agreement for a broker's commission. Affirmed.

[1]Reported in 118 Pac. 19.

*McBurney & Cummings, H. McC. Billingsley,* and *C. C. Cutler,* for appellants.

*Bamford A. Robb* and *Chas. P. Harris,* for respondent.

CROW, J.—The plaintiff, H. E. Orr, in his complaint against the Perky Investment Company, a corporation, George H. Gaches, and North Coast Fire Insurance Company, a corporation, in substance alleged that, during the month of May in the year 1908, the Perky Invesment Company, a real estate broker, was trying to sell certain land for Howard H. Hamlin, Philo D. Hamlin, and William D. Hamlin, the owners; that defendant Perky Investment Company requested plaintiff, also a real estate broker, to assist it in making the sale, and agreed to pay plaintiff one-half of all commissions the defendant should receive from the Hamlins; that plaintiff accepted the offer and made the sale; that on May 19, 1908, defendant Perky Investment Company tendered plaintiff a written contract executed by it, whereby it promised and agreed to pay him $1,437.50, which its secretary fraudulently and falsely represented was one-half of the entire commission to be paid by the Hamlins; that in fact the true commission was lot 9, in block 8, of the plan of North Seattle, which the Hamlins had caused to be conveyed to the Perky Investment Company, and which was of the value of $8,500; that plaintiff is now the equitable owner of one-half of the lot; that the Perky Investment Company, without consideration, executed and delivered a deed for the lot to the defendant George H. Gaches, who, without consideration, mortgaged it to the defendant North Coast Fire Insurance Company; and that the two defendants last named had notice of plaintiff's claim. Plaintiff prayed that the written agreement for his commission be so reformed as to comply with the real agreement between the Hamlins and the Perky Investment Company; that plaintiff be declared the owner of an undivided one-half of the lot free and clear

of encumbrance; and that the Perky Investment Company be ordered to convey the same.

To this complaint the defendants answered with admissions and denials only. The trial judge made findings in accord with the allegations of the complaint, and entered a final decree reforming the written contract for a commission as prayed, adjudging that plaintiff was and is the owner of an undivided one-half of the lot free and clear of encumbrances, that the deed to Gaches and his mortgage were fraudulent and void, and appointing a commissioner to execute and deliver a deed to plaintiff. The defendants have appealed.

The controlling question before us is whether the final decree is supported by the allegations of the complaint and the facts proven. We have carefully examined the evidence and conclude it sustains the findings of the trial judge, which in substance are, that the oral agreement for one-half of the commission to be paid by the Hamlins was made; that respondent made the sale; that appellant, the Perky Investment Company, tendered him the written agreement for $1,437.50 as one-half of the commission; that at the same time the Perky Investment Company through its secretary represented and stated to respondent $2,875 was the entire commission the Hamlins had agreed to pay, whereas he then well knew the true commission was to be lot 9, which was of the value of $6,500; that to defraud respondent and conceal from him the true commission, appellant the Perky Investment Company procured two separate written agreements from the Hamlins, in one of which they agreed to pay $2,875, and in the other of which they agreed to convey the lot to the Perky Investment Company for a nominal consideration; that appellant's secretary exhibited the former to respondent, but concealed the latter; that respondent believed these representations; that the entire commission, lot 9, has been earned; that a deed conveying the lot to the Perky Investment Company was delivered August 31, 1908,

as and for the true commission; that respondent is now the equitable owner of one-half of the lot; that prior to the delivery of the deed to it, the Perky Investment Company conveyed the lot to the appellant George H. Gaches, who immediately mortgaged it to the appellant the North Coast Fire Insurance Company; that they each at the time well knew respondent was the equitable owner of an undivided one-half of the lot; that they entered into a conspiracy to cheat, hinder and defraud respondent of his interest; and that the deed to Gaches and his mortgage to the insurance company were without consideration.

Impressed with the fact that, in the prayer of his complaint, respondent asked a reformation of the contract, which the trial court granted, appellants seem to have conceived the idea that if, as they contend, no reformation should have been decreed, the respondent is in no position to obtain any equitable relief, this being an action to enforce the contract after its reformation. Upon this theory appellants insist the contract cannot be reformed; that the proven fraud of the Perky Investment Company, if any, was not of such a character as will entitle respondent to any equitable relief; that equity will not reform the written agreement at respondent's instance, he having performed it with full knowledge of its terms and effect; that equity will not reform the agreement, as the reformation demanded is equivalent to the making of a new contract for the parties; and that equity will not reform a written agreement for the payment of money into one for the conveyance of real estate. On the other hand, respondent contends the original oral agreement for an equal division of the actual commission is not within the statute of frauds and should be enforced, and that, when the Perky Investment Company acquired title to the lot, a constructive trust arose in respondent's favor which will be enforced in equity.

Respondent's contentions must be sustained. While it is true that respondent, in the prayer of his complaint, asked

a reformation of the contract, we· regard the issue of refor-
mation as an immaterial one, in view of the fact that the
allegations of the complaint and the proofs made are suffi-
cient to establish a constructive trust, of which the Perky
Investment Company is trustee *ex maleficio,* in respondent's
favor. All parties to this action, to some extent, seem to
have proceeded on the theory that, under the statute of
frauds, respondent might need a written contract providing
for and exactly fixing his commission, and that the written
agreement for such specified commission should, upon the
facts shown, be so reformed as to also make it a valid con-
tract for the conveyance of real estate. This was unneces-
sary. In *Jones v. Kehoe,* 61 Wash. 422, 112 Pac. 497, this
court held that Rem. & Bal. Code, § 5289, which provides
that an agreement employing an agent or broker to sell real
estate for a commission shall be void unless in writing, ap-
plies only to contracts between the owner of the land to be
sold and the agent he employs to make the sale, and that an
oral contract between two brokers to divide the commission
is valid. It was therefore unnecessary for respondent to
have a written contract upon which to predicate his right
to recover one-half of the commission paid by the Hamlins.
The oral agreement was valid. Under it respondent and
the Perky Investment Company jointly earned the true com-
mission. When, in payment of such earned commission, ap-
pellant accepted title to the lot, it equitably. acquired the
lot for respondent as well as itself, and when it attempted to
deceive and defraud respondent by its statements and rep-
resentations that the Hamlins were paying a cash commis-
sion of only $2,875, and secretly attempted an appropria-
tion of the lot to its own exclusive use, a constructive trust
arose in respondent's favor. In equity appellant became a
trustee *ex maleficio* of such trust, holding title to an undivided
one-half of the lot for the benefit of respondent, the equitable
owner, who was entitled to have the constructive trust de-

creed and enforced. Mr. Bispham in § 95 of the eighth edition of his Principles of Equity, says:

"Constructive trusts, like resulting trusts, do not fall within the statute of frauds. Such has been the uniform doctrine of the English courts, and the same rule has been adopted in this country. Any other interpretation, indeed, would be in contravention rather than in fulfilment of the provisions of the statute; for it has been well said that it is not easy to see how such a trust could be established except by parol evidence, and that if such evidence were not competent, a 'statute made to prevent frauds would become a most potent instrument whereby to give them success.'"

See, also, *Borrow v. Borrow*, 34 Wash. 684, 76 Pac. 305; *Peterson v. Hicks*, 43 Wash. 412, 86 Pac. 634; *McSorley v. Bullock*, 62 Wash. 140, 113 Pac. 279.

When the Perky Investment Company fraudulently obtained the entire legal title to the lot in settlement of the commission which was the consideration for the deed, it acquired such complete legal title by wrongfully appropriating, utilizing and investing respondent's one-half of the commission. It, as a party guilty of fraud, became trustee *ex maleficio* of the constructive trust, which was thereby created for respondent's protection and which was not within the statute of frauds. Without regard to the immaterial issue of reformation, respondent is entitled to the ultimate and substantial relief granted by the final decree, which has adjudged him to be the equitable owner of an undivided one-half interest in and to the lot free and clear of encumbrances, and has appointed a commissioner to convey the same to him. The judgment is affirmed.

Dunbar, C. J., Chadwick, and Ellis, JJ., concur.

Morris, J., took no part.