[No. 30827. Department One. November 28, 1949.]

THEODORE H. PEDERSEN et al., Respondents, v. ELDON JONES et al., Appellants.[1]

[1]Reported in 211 P. (2d) 705.

*Orville W. Duell,* for appellants.

*Harold M. Gleason* and *Harvey W. Clarke,* for respondents.

BEALS, J.—Plaintiffs, husband and wife, instituted this action against Eldon Jones and Olive M. Jones, his wife, alleging unlawful profits received by defendants, in connection with certain real estate transactions, while defendant Eldon Jones (who will generally be referred to as though he were the sole defendant and appellant in the action) was acting as plaintiff's agent.

In their complaint, plaintiffs alleged that, during the year 1947, the defendant Eldon Jones represented them as their agent to sell and purchase real estate, and that the defendant, while acting as their agent, took advantage of the situation to make an unfair profit, to plaintiffs' detriment. Plaintiffs demanded judgment against defendants for a considerable sum, which they alleged was due them in connection with the transactions referred to in their complaint.

The defendants answered the complaint, denying that defendant Eldon Jones had, in any manner, violated his trust as plaintiffs' agent, and praying for dismissal of the action.

The facts will be stated in connection with our discussion of the evidence.

The cause was tried to the court, which entered findings of fact and conclusions of law in plaintiffs' favor, followed by a decree against defendant for the sum of $1,750, with interest to the date of trial, and further providing that the decree should be satisfied by applying the amount thereof against an indebtedness then due defendant from plaintiffs in the amount of over $2,200. The decree further provided that, after complete liquidation of this indebtedness, further payments made on the contract for the sale of plaintiffs' property should be made to them.

From the decree entered, defendants have appealed, assigning errors as follows:

"(1) The Court erred in admitting over objection of Appellant evidence of an oral agreement of employment of defendant as a real estate broker to find real estate for its purchase by the plaintiffs.

"(2) The Court erred in making and entering its Findings of Fact as recited in Paragraphs II, III, IV of the Finding of fact.

"(3) The Court erred in making and entering its Conclusions of Law as recited in Paragraph II of the Conclusions of Law.

"(4) The Court erred in making and entering its Judgment in favor of plaintiffs as to Paragraph 3 thereof.

"(5) The Court erred in refusing to dismiss plaintiffs' action for lack of sufficient evidence to support a money judgment against the defendants."

The trial court patiently heard the evidence offered by the parties, the statement of facts containing 253 pages of testimony and 26 exhibits.

Respondent Theodore Pedersen had farmed small tracts; at the time of the trial, he was fifty-one years of age, and in poor health. He was not experienced in business affairs.

Appellant Eldon Jones was a real-estate broker and had been so occupied for some time.

A year or more prior to the initiation of the transaction which resulted in this lawsuit, appellant called upon respondents with the result that they listed their farm for sale, appellant being advised that they would not sell until they had acquired another home. Nothing tangible resulted from this listing, and, September 23, 1947, respondents again listed their property for sale with appellant.

A few days thereafter, appellant procured from the Fergusons a listing of their property. He showed respondents two other properties which had been placed with him for sale and, on the same day, showed them the Ferguson land, appellant having previously told respondents not to say anything to the Fergusons concerning their desire to purchase any real estate.

Appellant testified that he told respondents that he owned the Ferguson property and that they could purchase it for about $8,500. Respondents testified that appellant told them that the Fergusons owned the property and that respondents could probably purchase it for about seven thousand dollars, but, as above stated, told them that they should not discuss any details concerning the purchase with the Fergusons. Appellant also testified that, later, he told respondents that the property might be purchased for not less than $8,900, which respondents denied.

However, October 2, 1947, respondents signed an agreement to purchase the Ferguson property, appellants being named in the agreement as the "seller." Respondents testified that, when they signed the agreement, the amount of the purchase price was not filled in and that no copy of the agreement was then delivered to them. Mr. Pedersen testified that, several days later, he received a copy of the agreement, in which a purchase price of $8,900 was stated. This copy, which is in evidence, was not signed by any seller, the agreement bearing only respondents' signatures.

Appellant testified that the purchase price was filled in when respondents signed the agreement and that a copy was then left with them: Appellant admitted that this copy did not bear his signature.

During the course of the evening of October 2nd, appellant called upon the Fergusons and procured an agreement from them by which they contracted to sell him their property for seven thousand dollars, and, promptly thereafter, appellant obtained an agreement from a Spokane bank whereby the bank agreed to loan to respondents five thousand dollars, to be secured by a mortgage upon the Ferguson property. Respondents endorsed the check received from the bank to appellant, as a down payment on the Ferguson property. The five-thousand-dollar loan from the bank was not made pursuant to any request from respondents, and the money was paid to appellant after the transaction was finally closed.

October 24, 1947, respondents signed a final agreement, whereby they agreed to purchase the Ferguson property from appellant for the total purchase price of $9,650, Mr. Pedersen testifying that he signed this agreement because appellant told him that, if he did not, he would suffer a heavy loss. There was some testimony to the effect that the price was increased because of a furnace that appellant had had installed on the Ferguson property. Two days after signing this agreement, respondents discovered that appellant had paid the Fergusons only seven thousand dollars for the property.

At appellant's request, respondents had, October 24, 1947, executed and delivered to him a warranty deed to their farm, which, they testified, appellant told them was by way of security for the down payment on the Ferguson property.

The Fergusons executed and delivered to respondents a warranty deed to their property, dated October 27, 1947, testifying that appellant told them that the reason appellants were not named as grantors in the deed was that he desired, as a notary public, to take the Fergusons' acknowledgment to the deed, which, of course, he could not do if he were named as a grantor in the transaction.

When respondents learned that appellant had paid Fergusons only seven thousand dollars for their property, they questioned him concerning the matter, testifying that appellant then informed them that he had a perfect right to make a profit on the transaction.

November 3, 1947, appellant received a written offer from Ernest A. Martin for the purchase of respondents' farm, which offer respondents accepted November 10, 1947, a formal contract of sale having been executed December 22nd following. From the down payment made by the Martins upon this contract, appellant deducted his commission for making this sale.

Based upon his first assignment of error, appellant contends that the trial court erred in admitting testimony on the part of the respondents to the effect that it was orally

agreed between the parties that appellant, before effecting a sale of respondents' property, would find for them other real estate that would be suitable for their future home. In this connection, appellant cites the following portion of Rem. Rev. Stat., § 5825 [P.P.C. § 577-3], and argues that the trial court committed error in admitting, over his objection, evidence concerning any such agreement:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

Appellant relies upon the case of *Carkonen v. Alberts,* 196 Wash. 575, 83 P. (2d) 899, 135 A. L. R. 209. The opinion in the case cited is very long, and many authorities are discussed. Paragraph No. 4 of the syllabus (quoted by appellant in his brief) reads as follows:

"The weight of authority is to the effect that an agent orally employed to buy land for another, but who buys it for himself with his own funds, can not be compelled to convey the land to his principal; and the agent's repudiation of his oral agreement, declared void by the statute, does not constitute such fraud as to give rise to a constructive trust or any right of action thereon."

In the course of the opinion, appears the following:

"While there .is language in *Merriman v. Thompson,* 48 Wash. 500, 93 Pac. 1075; *Stewart v. Preston,* 77 Wash. 559, 137 Pac. 993, and *Ewing & Clark v. Mumford,* 157 Wash. 617, 289 Pac. 1026, which tends to support appellant's theory, the fraud perpetrated by the agent in those cases distinguishes them from the case at bar."

In the case of *Merriman v. Thompson,* 48 Wash. 500, 93 Pac. 1075, a judgment rendered by the superior court in plaintiffs' favor against real-estate brokers, who had represented plaintiffs in selling real estate, was affirmed. The respondents had authorized the appellant brokers, in writing, to sell a tract of real estate. The time limit contained

in the writing expired, and, thereafter, respondents orally authorized the brokers to sell the land for twenty-five hundred dollars, agreeing to pay five per cent commission. Thereafter, by letter, they authorized the brokers to sell the land for $2,250. The brokers offered respondents nineteen hundred dollars for the land " 'if accepted now.' " This offer resulted in a telephone conversation between the parties, concerning which the testimony was conflicting. Testimony introduced by respondents was to the effect that they were led to believe that appellants were selling the property, as respondents' agents, to a third party; that the price mentioned was the highest amount that could be obtained, and that consent to the sale was given in view of those circumstances. Appellants prepared a warranty deed, naming a consideration of two thousand dollars, conveying the property to the third party, and

"In the meantime appellants had sold the property to one Gregory—in fact, had negotiated with him for a sale for $2,500 prior to the time of sending the telegram to respondents."

The grantee, Mr. Gregory, testified that

". . . respondents [evidently in error for appellants], in selling the property to him, told him that it belonged to Mr. Merriman, and that he understood that Merriman was asking $2,500."

In affirming the judgment, this court said:

"The fact that there was not in writing an employment of appellants as agents for respondents might have a bearing upon the question of their commission. But we do not think the lack thereof would justify appellants, after selling this property for $2,500, in retaining the difference between that and $2,000, which was the amount they represented to respondents as being the highest sum they could get for the property, and for which they had sold, or were about to sell, the same. *Stearns v. Hochbrunn*, 24 Wash. 206, 64 Pac. 165."

In *Stewart v. Preston*, 77 Wash. 559, 137 Pac. 993, this court affirmed a judgment in favor of the plaintiffs for one thousand dollars against a real-estate broker, who, while

acting as agent for plaintiffs in the purchase of a tract of land, falsely represented to them that he had purchased the land for one hundred dollars an acre, which sum plaintiffs paid to the broker for the land, subsequently learning that the broker

". . . had entered into a secret arrangement with the owner of the land whereby the land was actually sold at $75 per acre, but the seller was induced by Preston [the broker] to name the consideration in the deed at $100 per acre in order to deceive and mislead respondents, paying the difference between the real consideration and the assumed one to Preston."

The appellant broker relied upon the fact that no written memorandum or agreement had been entered into between the parties. The action was tried to a jury, which returned a verdict in favor of the respondents, and, on appeal to this court, the judgment entered upon the jury's verdict was affirmed.

In the case of *Peirce v. Wheeler,* 44 Wash. 326, 87 Pac. 361, cited in *Stewart v. Preston, supra,* this court, in an action to enforce specific performance of a contract to sell real estate, said:

"The contract which the statute declares to be void unless in writing is one for the payment of a commission to the agent, but it does not say that the actual authority to sell or purchase must be in writing."

It might well be argued that the opinion of this court in the case of *Carkonen v. Alberts, supra,* held contrary to the foregoing quotation, but, as the *Merriman* and *Stewart* cases were distinguished in the opinion in the *Carkonen* case, it is clear that these cases are still recognized authorities.

In the case of *Zittel v. Meyer,* 107 Wash. 585, 182 Pac. 585, in affirming a judgment in favor of two of three joint purchasers of land against the third purchaser, this court said:

"In *Stewart v. Preston,* 77 Wash. 559, 137 Pac. 993, we committed ourselves to the salutary rule that the fraud of an agent who was orally employed to purchase real estate for his principal may not be avoided by the plea that his agency was not evidenced in writing."

■ The facts disclosed by the record in the case at bar bring this case within the rule laid down in the *Merriman* and *Stewart* cases, rather than within the scope of the *Carkonen* case, and the trial court did not err in admitting the evidence of which appellant complains.

Pursuant to assignments of error Nos. 2, 3, 4, and 5, appellant's counsel argues that the findings of fact entered by the trial court are not supported by the evidence, and that the judgment appealed from should be reversed. In essence, appellant argues that the trial court erred in believing respondents, and in refusing to accept appellant's theory concerning the evidence and the law.

The trial court found that appellant Eldon Jones was employed to find for respondents a place to which they could remove upon selling their own property. The court's finding of fact No. 2 includes the following:

". . . the defendant in his capacity as a real estate broker approached the plaintiffs for the purpose of securing employment from them to find a purchaser for their farm property. At that time or in the course of that transaction, the plaintiffs advised the defendant that the health of the plaintiff, Theodore H. Pedersen, was such that it appeared probable that he would not be able to continue to carry on the heavy work of farming operations and that they desired to obtain property suitable for use as a sanitarium or for the care and maintenance of elderly people. That the defendant then accepted employment as agent and broker from the plaintiffs for both purposes, that is, to secure a purchaser for the sale of their interest in the property they then occupied and to find property suitable for the above named purposes for plaintiffs to purchase. That defendant, Eldon Jones, as plaintiffs' agent, made several attempts to sell plaintiffs' farm and to interest plaintiffs in property to purchase suitable for their expressed needs during the two years prior to the commencement of this action, and he frequently consulted with said plaintiffs regarding property he had found, which might be suitable for plaintiffs; that on October 2, 1947, said defendant, while acting as the agent of plaintiffs to find suitable property to purchase, showed them three different properties available for purchase known as the Indian Prairie property, a dairy; the Nora property, property suitable for a nursing

home and the Ferguson property, owned by F. S. Ferguson and Stella Ferguson, husband and wife. Said Jones told the plaintiffs, concerning the Ferguson property and prior to showing said property, that he thought he could get them the Ferguson property for around $7000.00. That Jones had previously ascertained that the Fergusons were asking $7000.00 for said property. The Ferguson property is described as follows, to-wit: Lot 7, 8 and 9 in Block 2 of University Place, in the County of Spokane, State of Washington. Said Eldon Jones then and there, before taking plaintiffs upon the Ferguson property, advised plaintiffs that they must not discuss the sale or the price of the property with the Fergusons as, he, Eldon Jones, could get them a better price and because the Fergusons were flighty, wish-washy people, and that plaintiffs might queer the deal. Plaintiffs accordingly did not discuss the sale or the price with the Fergusons and were, in fact, not even introduced to them."

The evidence before the trial court in the case at bar shows a different state of facts from that in the case of *Buckley v. Hatupin*, 198 Wash. 543, 89 P. (2d) 212, which is strongly relied upon by appellant. In the case cited, this court affirmed a judgment of the superior court dismissing an action to recover real property, holding that the plaintiff appellants had received that for which they had bargained and were entitled to no relief. From the evidence, it appeared that the respondent was not appellants' agent, and that the parties were dealing at arm's length. The trial court expressed the opinion that, while respondent had not truthfully represented the situation to appellants, the latter had not relied upon his statements and that they had suffered no detriment therefrom. The court, being of the opinion that respondent was not appellants' agent, but represented a third party, held that the evidence disclosed no basis for a judgment in appellants' favor. In affirming the judgment appealed from, we said:

"After careful consideration, we are of the opinion that, however unethical respondent's conduct may have been, appellants have no legal ground for recovery of judgment against him."

The case cited does not support appellant's contention here.

■ The case at bar is one in which the trial judge, who heard and saw the witnesses, has indicated that he believed the testimony introduced by respondents. At the close of the case, the court delivered an oral summation of the evidence, stating that, in the court's opinion, "the overreaching, the deceit has been shown in this case by clear, cogent, and convincing evidence," and directed the entry of judgment in respondents' favor. Thereafter, the court entered findings of fact clearly summarizing the evidence, followed by its conclusions of law and the judgment in respondents' favor, from which appellants have appealed.

The judgment is amply supported by the findings of fact, which, in our opinion, are clearly in accord with the preponderance of the evidence.

The judgment appealed from is, accordingly, affirmed.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and DONWORTH, JJ., concur.